Go on to case number 5, and that is 22-19-25, United States v. Russell Taylor.  Okay, damploy. can I have you read Mr. Mr. Yes. Thank you, counsel. My name is Jeremy Gordon, and I represent the appellate in this case, Mr. Russell Taylor. Mr. Taylor was convicted by plea after the district court denied Mr. Taylor's motion to suppress and denied Mr. Taylor's request to have a Franks hearing. Now, in my time before the court, I will explain how there was not a sufficient probable cause for the search warrant to be issued, and I will explain how the district court should have set a hearing under Franks v. Delaware and ultimately granted our motion to suppress. What do you think is the most significant flaw in the warrant application? The single piece of evidence or omission of evidence from the warrant you think would have made the most difference to the judge issuing the warrant? I believe that the issue that made the most difference to the judge in issuing the warrant was the Jane Doe. And the reason that now, as the other brief indicates, the Jane Doe in this case was communicating with Mr. With Mr. Taylor. And when I was communicating with Mr. Taylor, she was also sitting in the room with a state troop. And the warrant and the investigation and the investigative interview indicates that they were sitting together, they were both laughing about it, and that she was egging on Mr. Taylor when Mr. Taylor was giving her the text messages. Now, what's the significance of that, given that Detective Getz, who was independent of the state trooper, did the investigation here and independently reviewed all of the text messages? Well, Your Honor, when so when they interviewed the Jane Doe, they informed the Jane Doe, we're going to we're going to either treat you as a confidential informant or we're going to treat you as a concern. And on another warrant affidavit, they indicated we're going to treat her as a concerned citizen. But the truth is, but neither of those things were true. So those things matter. Because in addition to that, there were six months between when the when when the text happened and when the investigation happened, the investigative interview happened. And when the when the search warrant was issued and when the search warrant affidavit was filed and presented. Now, what's the significance of that with respect to Ms. Doe? That means that is because when you because it shines a light, first of all, it shines a light on what was not done in this case. Now, in the six months between when the investigator on the investigation happened and when the search warrant was issued, the government could have taken her phone, engage in their own investigation, sent text to Mr. Taylor, acting as if they were her as if as they indicated, I believe, when they were doing take her phone and do a forensic examination of it. Yes, Your Honor, they did. They did do in a forensic investigation of it. But they also are in in several cases. And I believe that they explained it to her in this case that they could have taken the phone and act as an activist as if they were her in order to get more clear information because. But that's not required for probable cause. It's not required for probable cause, but it is something that is done in many situations because. But the question is, what is lacking here to establish probable cause? And certainly they could have have taken the phone and pretend that they were her and engaged in further conversation with your client via text. But that's not mandated to meet a probable cause standard. So the fact that that wasn't in there, I don't think is here or there for the probable cause issue. Well, Your Honor, with regards to the probable cause issue, there is what they what they do or the Franks. I'm sorry. Yes. Or the Franks hearing with regard to the probable cause issue. They what they what they ended up having with regard to the child pornography is text back and forth saying, what do you want? I want young girls. How young do you want? I want legal age. Now, then they say and then Mr. Taylor says, that's fine. Keep in mind, we go to Thailand on occasion. But first of all, there's nothing further after that. There's nothing further after that. There is there are no pictures. There are no pictures of of girls of any age. And that was disclosed in the affidavit. That was disclosed in the affidavit. And it also goes to why there's I do that. It goes to why there why there was no probable cause overall. But why? But the problem with regard to the Franks hearing is that the problem with the Franks hearing is that she was the failure to disclose her and the failure to disclose her, her ties and her and her and her ties to law enforcement. The fact that she was the fact that she was sitting in the same room at her and also engaged in an on again off again relationship with Ron Santa. All of those things show that all those things show that her credibility is that issue. When Mr. Gordon, with respect to the six month delay, I'm hoping the government may also be able to shed some light on this. But everybody's been at least implying, as I read the briefs, that the Jane Doe's relationship with the trooper changed from October until April. Can you shed any light on that? As was so. So it's my understanding that and I believe that this is in the motions that are presented by the government that that that over time, they did become a they did become a romantic became an item. They were not in October, but were by April. Your Honor, we submit that they were something. Okay, I'll ask the government. Now, if the Warren application had not included the handwritten edition of the reality, could the issuing judge nevertheless have relied on the discussion of bestiality in the attached affidavit as support for the warrant? We believe we believe that it's our position that that it's that there was not enough when you look, there was not enough for for a claim of bestiality or claim bestiality to be made. Well, Taylor, I mean, interesting debate about whether about what exactly Jane Doe said during the interview, and what was disclosed in the affidavit. But there seems to be no doubt that Mr. Taylor sent a text message saying, that's my wife in the picture. Now, it turns out later to be false. There are also a lot of other text messages indicating at least an interest in bestiality. Apart from this issue presented by the handwritten notations to the to the inner to the warrant, I have trouble seeing why his texts are not sufficient to be probable cause. We submit, Your Honor, that when you look at the search warrant affidavit as a whole, that those two things go hand in hand. Both the both the identification of there's answer that was that was texted by that was texted by Mr. Taylor, but also the explanation and the identification of the aerials. When you look at it, there's there's three about I would remember I seem to recall that there are about two to three lines of discussion about the aerials. They go in it's our position that that those two things go hand in hand. Why would that matter when Mr. Taylor in the text identified the woman in the picture as his wife? We submit we submit that it matters because we submitted it matters because because that's that is the totality of that. Because because when we look at it, it's because when we look at it, other than. We look at it other than what they have there, then that's all. And it's our position that that's not. But aren't the police, I mean, what could it be? I mean, aren't the police entitled to believe that if he says this is my wife, Angie, with the dog, that it was Angie with a dog? I mean, what more could there have been? There could have there could have been more text between the two of them. There could have been there could have been a text where Angela's face was identified. None of those things happened. And there were other things happened. And there were six months between the period of the of the of the investigation and of the end of the search warrant affidavit. If there are no other questions for me, then I yield the rest of my time for about. Thank you, Mr. Gordon. Miss Olivier, is it Olivier? Am I pronouncing it properly? You are your honor. Good afternoon. Now, may it please the court. My name is Kate Olivier and I represent the United States of America. Mr. Taylor identified just now the most significant flaw in the search warrant affidavit as the fact that Jane Doe was sitting with Master Trooper Etter and laughing and egging Mr. Taylor on when the text messages were sent. Ultimately, your honors, that is irrelevant because the warrant is valid and there absolutely was probable. Can you help us out with the changes in the relationship between Etter and Jane Doe? Yes, your honor. When the text messages were sent, Master Trooper Etter and Miss Doe were friends. At some point thereafter, they were engaged in a romantic relationship briefly. And by the time the search warrant affidavit was sworn out, your honor, the romantic relationship had ceased. And do we have any evidence of that? Not in the record, your honor. Okay. Now, if the affiant for the search warrant had been the person, if that trooper had been the affiant, would you agree that information about that relationship would seem material to an issuing judge? I think that if the affiant was the individual engaged in the romantic relationship, it could potentially be material. I can't imagine that it would not be. Right. Okay? Yes. Think about Brady material. If this is a government witness, you've got to disclose that, right? Right. Okay. So, the question is, how significant is that trooper's relationship with the affiant over time? I've got to say, I've never seen anything like this in an investigation where the target and one of the officers involved in the investigation are potentially rivals for the favors of the witness. Candidly, your honor, Master Trooper Etter was not involved in the investigation. Master Trooper Etter was present when the text messages were received by Jane Doe, and he reported them to his superiors because he is required to do so by law. But beyond that, he had no involvement in the investigation. What happened was the investigation was then referred to Detective Goetz, who works in the Crimes Against Children Unit and does cyber crimes and internet crimes and sex crimes, things of that nature. Thereafter, Master Trooper Etter had no involvement. Okay. Can I shift gears to the handwritten notes on the warrant? Certainly. You assert in your brief that those changes had the issuing judge's approval. Yes, your honor. What support do you have for that? In the record, none. However, Detective Goetz disclosed to the government, and I admit it is not in the record, but disclosed to the government that those changes were made at the request of the issuing magistrate judge while he was in the magistrate judge's presence. That's a logical inference to make as well, because Detective Goetz laid out in the affidavit probable cause to search for bestiality in children. This is to say this happened in the magistrate's presence? Yes. Why on earth didn't the judge approve those? I'm very, very troubled by the door that you're opening here. I wish I could answer that, your honor. I wish I knew why the judge did not initial the changes. Candidly, my practice, if this ever occurs, is to have the judge initial them. Can you point us to any other cases where handwritten changes expanding a warrant have been approved by a court without a record of the issuing judge approving them? No, your honor, but ultimately I don't think that that's outcome determinative here either, because the affidavit established probable cause to search for bestiality in child pornography. The logical inference here is that the words and bestiality were added to the warrant to make the warrant match the probable cause. You're asking us to guess about what's not in the record here, right? I don't see why there's not. Why not do this at a Franks hearing? Because ultimately it doesn't matter, your honor. There's probable cause even without those handwritten additions. Okay, you say there's probable cause for child porn, right? Okay. It looks to me like all you've got is this reference to young girls and the Thailand trip, right? There's more than one. I know you found tons more, okay, but at the time of the search warrant, what else is there on child pornography? There's the reference to young girls. There's the Thailand trip. There's the fact, and it's reflected in the affidavit, that there are children that are present in the Taylor home, that Mr. Taylor and his then-wife Angela had children who were occasionally present in the home, and there was Detective Goetz's training and experience that this sort of material would be present in the place where the defendants felt most comfortable their home. If they're engaging, right? But all you've got really is this Thailand reference, and Jane Doe says, and this is in the affidavit, as I recall, he's never been to Thailand, okay? And as I've been thinking about this case, here's the analogy I'm thinking about in, say, a drug case. Somebody who gets a text from a friend who says something like, if you're looking to score, I might be able to help you. Is that enough to get a search warrant to tear apart the sender's home? Because he might have some drugs? A text message that says, if you're looking to score, I might be able to help you without more is, I would, in a vacuum, no. I think that that would be awfully thin. How is this different? I think this is different because there was more than just a single text message wherein Mr. Taylor said, I have images, or offered to send images of young girls. There were multiple text messages between Mr. Taylor and Ms. Doe, and also between Mr. Taylor's wife, Angela, and Ms. Doe, discussing sexually taboo behaviors. There was a reference where Mr. Taylor said, keep in mind, we travel to Thailand on occasion, and Detective Getz knew from his training and experience that individuals who travel to Thailand often do so to engage in sex tourism and sexually taboo behaviors. There was the fact that the phone that had sent the text messages, including the bestiality image, which is absolutely criminal, was tied to Mr. Taylor. The phone was then tied also to the residence that was searched. There was surveillance done on the residence. It sounds like you want the bestiality evidence to corroborate the child pornography suspicions. Is that right? Not necessarily, Your Honor. I don't think that's necessary. I thought that's what you were just doing. Because on the child pornography, there's very little. If we have probable cause for the bestiality but not the child pornography, do you need what's handwritten on the warrant? Does it matter? If you have probable – I want to make sure I heard you correctly. If you have probable cause in the affidavit to support that there would be evidence of bestiality in the home but not the child porn, do you need the handwritten information on the affidavit, on the warrant itself? Does that matter? Does it matter that the warrant doesn't say in bestiality if probable cause was established in the affidavit? Yes. I think that if probable cause was established, then the warrant is good even if the words in bestiality were not included. And the fact of the matter is there was probable cause established here to search for both bestiality and child pornography. There was the statement of Jane Doe, which was thorough. It was detailed. She explained why she believed the woman in the picture that was sent to her was Angela. She explained how she knew Mr. Taylor and Angela. I'm agreeing with you for purposes of the hypothetical that there's probable cause on the bestiality. But if there isn't on the child pornography, does it matter that the warrant may not have had bestiality written on it? No, because I believe probable cause was still established. I think that there would be probable cause for the warrant to be issued. I don't know that that's going to be outcome determinative. I see my time is running short. Unless there are other questions. Yes, Judge Hamilton. I'm just checking notes. All right. I take it that basically what you're saying is that whether Joe believes that he goes to Thailand or he doesn't go to Thailand doesn't matter. Because the police were entitled to believe what he wrote. The police were entitled to believe what Mr. Taylor said in the text. Yeah. I take it that's your view. That this was Angela in the picture. Right. Yes, I think they are entitled to believe what Mr. Taylor said about traveling to Thailand. I think they were also entitled to believe what Mr. Taylor said about the woman in the text message being Angela. I think they could take him at his word, but they also did do more than that. They did conduct a corroborative investigation. They did take additional steps to verify what Ms. Doe told them and to corroborate what she had reported. Okay. All right. Thank you. I guess. Was there anything further? I don't want to cut either of you off, Judge Hamilton. No, thank you. Thank you. Okay. Well, Mr. Gorsuch, come on up and we'll give you your two minutes. Thank you, Judge. So, to touch on a couple things in response or in reply, it is our position that there should be a Frank's hearing based on the relationship of Trooper Etter and the Jane Doe. When did it start? When did it end? What did they talk about? Did this come up in their explanations and in their talking? Did this communication or about this investigation come up in their pillow talk? What happened with regards to this case? The government says that he was not present in the investigation, but how could that be when he was present in the room when they were giggling and talking about it? Did he say anything at that time while they were talking and giggling? Did he say anything? Ask him this. Ask him that. These are things that would come up in a Frank's hearing. Second, with regards to the young girls and with regards to the child porn allegations, I agree with Your Honor, Judge Hamilton, that there is shockingly little here. There is texting back and forth. There is a statement. How about do you want photos of young girls along with the Thailand comment? Young is never fleshed out, to be honest with you. The statement says, what do you want? This is what we have. She says young girls. Then she says young girls. Then Mr. Taylor says, how young do you want? And then Jane Doe says, of legal age. There's never explicit talk about we want people under 18. And when she talked to the police, she said, I didn't ask for under 18. So then I agree with Judge Hamilton that there is shockingly little. What about the fact that in the affidavit in paragraph one, the detective says that as part of his experience, he has learned that subjects engaged in the possession, production, and dissemination of pornography often have, in addition to other things, evidence of bestiality at their home. I don't know where he gets that from. His experience. That's what he says. He's been trained. He's gained experience through classes as well as hands-on investigations. Doesn't that bolster the probable cause for child pornography? Our submission is no. We submit to the court that no, because first of all, it's a, I would like to know where that even comes from, or what school that is, where he said that, where he got that information from. But ultimately, it's our position that that is not enough to say, oh, I learned this here, and that gives me the permission to do whatever I want or to go wherever I want or to get a search warrant for whatever we want. Our position is no. If my time is up or if there are no questions for me, then I'll stand on my brief. Thank you, court. Thank you, judges. You're very welcome, and we thank you, and we thank Ms. Olivier, of course.